### MARIA FRENCH *vs.* HEMAN VINING.

If a person sells, for the purpose of being fed to a cow, part of a lot of hay on which he knows white lead to have been spilt, and the cow dies from the effect of the lead in the hay, he is liable for her loss, although he carefully endeavored to separate and remove the damaged hay, and thought that he had succeeded.

On the trial of an action for causing the death of the plaintiff's cow by unwholesome food sold by the defendant, it appeared that a veterinary surgeon lived in the plaintiff's neighborhood, and the defendant requested the judge to rule that if the plaintiff neglected to employ him the plaintiff could not recover; but it did not appear that the plaintiff knew of the surgeon. The judge ruled that, if the plaintiff knew the cow to be in danger of death, the plaintiff was bound to employ the best remedies within reasonable reach, at reasonable trouble and expense; and if the jury were satisfied that such remedies would have been effectual, and the plaintiff did not seek for their use, nor inform the defendant seasonably of the facts, the plaintiff could not recover. *Held,* that the defendant had no ground of exception.

TORT for causing the death of the plaintiff's cow. The declaration alleged that " the defendant sold to the plaintiff a quantity of hay to be fed to her cow, as hay fit for such use; and said hay was not wholesome or fit for use, but was unwholesome and poisonous, and was covered and saturated with paint, a poisonous substance; all which the defendant well knew, and had good reason to know; and the plaintiff, believing said hay to be wholesome and fit for use, fed the same to her said cow, and said cow was thereby poisoned, and sickened and died; whereby, and by reason of the false and negligent conduct of the defendant in making said sale, the plaintiff was put to great expense in attempting the cure of said cow, and the same became of no value to the plaintiff."

Trial in the superior court, before *Rockwell,* J., who allowed a bill of exceptions of which the material part was as follows:

" There was evidence tending to show that white lead paint was accidentally spilt upon the defendant's hay with his knowledge, about six months before the death of the cow; that he then carefully endeavored to separate the painted hay from the rest, did separate and remove a part, and supposed he had separated and removed the whole of the hay thus having paint adhering, from that which was entirely free therefrom; that from what remained he sold to the plaintiff six bagsful from time to

time as it was needed for her cow, for the purpose of being fed to the cow; that the cow ate all of it, except the last bagful, of which a portion was given to her on a certain evening; that the cow was thereby found sick the next morning and continued sick for about a week until she died; that it was not suspected by the plaintiff that the cow was suffering from lead poisoning until three or four days before she died, when hay having paint upon it was found in the manger where the cow was fed, and shown to the plaintiff, and the plaintiff was then led to believe that the paint was the cause of the cow's sickness; and that a well known veterinary surgeon and physician, educated in the theory and for about twenty years in the full and constant practice of the veterinary art, and acquainted with the nature and effect of lead poison, resided within about six miles of the residence of the plaintiff and the place where the cow was sick, and was not called or sent for by the plaintiff.

" The judge ruled that, if the cow died in consequence of eating the paint adhering to the hay sold by the defendant, the plaintiff might recover, although the defendant did not know or believe that there was paint upon the hay; and that the defendant was bound to use the utmost care in separating the paint from the hay so sold.

" The defendant requested the judge to instruct the jury as follows: That the only ground for claiming damages on the evidence was, that a warranty of the quality of the hay, or deceit in the sale of it was proved, and in either case the measure of damages was the difference between the value of the hay as it was warranted to be, and as it actually was; that if the defendant sold to the plaintiff the hay in good faith, having faithfully endeavored and, as he supposed, succeeded, before the sale, to separate from it whatever would render it unwholesome or injurious, the plaintiff could not recover in this action, although the defendant sold with the knowledge that the hay was to be fed to the plaintiff's cow and for that purpose; that if the plaintiff, while the cow was sick and several days before it died knew or had reason to believe that the cow was suffering from lead poison, and neglected to procure the advice and assistance of a veterinary

surgeon or physician having knowledge of the remedies for such poison, and skill in their use, when such advice and assistance were within reasonable distance and could be had at reasonable expense, then the plaintiff could not recover in this action.

" But the judge declined to give such instructions in the form presented, and instructed the jury as follows : To sustain her action the plaintiff must satisfy the jury affirmatively that the poisoned hay was the cause of the death of the cow. It being admitted that the defendant knew that white lead paint had run upon the hay, and that the defendant sold some of the hay to the plaintiff, and there being no evidence of knowledge of this on the part of the plaintiff, it was the duty of the defendant to remove the paint from the hay before selling and delivering it; and, if the cow died from eating the poisoned hay, the defendant was liable in this action, and the rule of damages was the value of the cow. If the plaintiff, while the cow was sick and several days before she died, knew that the cow was suffering and in danger of death from lead poison, she was bound to employ the best remedies within her reasonable reach, at reasonable trouble and expense ; and if the jury were satisfied that such remedies would have been effectual, and the plaintiff did not seek for their use nor inform the defendant seasonably of the facts, she could not recover."

The verdict was for the plaintiff, and the defendant alleged exceptions.

*S. T. Spaulding*, for the defendant. 1. There was no warranty implied in the sale. Where the seller of unwholesome provisions has been held liable, it has been on the ground of fraud. 1 Smith Lead. Cas. (6th Am. ed.) 303. *Emmerton* v. *Matthews,* 7 H. & N. 585. *Emerson* v. *Brigham,* 10 Mass. 197. *Peckham* v. *Holman,* 11 Pick. 484. There is, at any rate, no implied warranty, where the seller is not a professed buyer or seller of provisions. *Burnby* v. *Bollett,* 16 M. & W. 644. *Moses* v. *Mead,* 1 Denio, 378. No warranty is implied from the seller's knowledge of the use to be made of the thing sold, unless the buyer orders it as fit for such use, or the seller from his employment impliedly promises proper skill in supplying it. *Smith* v. *Marra•*

*ble*, 11 M. & W. 5. *Sutton* v. *Temple*, 12 M. & W. 52. *Hart* v. *Windsor*, Ib. 68. *Turner* v. *Mucklow*, 1 H. & C. (Am. ed.) 859; *S. C.* 6 Law Times, (N. S.) 690; 8 Jur. (N. S.) 870. *Dickson* v. *Jordan*, 11 Ired. 166. *Archdale* v. *Moore*, 19 Ill. 565. *Mason* v. *Chappell*, 15 Grat. 572. *Milburn* v. *Belloni*, 34 Barb. 607. The only other ground upon which the defendant can be held liable is that of such negligence in making the sale as amounts to constructive fraud; but such negligence must be gross. No question of the degree of negligence was submitted to the jury. 2. The plaintiff should have employed the veterinary surgeon; the opinion of the jury that the cow could not be cured is no answer to the failure to do so. *Eastman* v. *Sanborn*, 3 Allen, 594. *Dean* v. *Keate*, 3 Camp. 4.

*W. Allen*, for the plaintiff.

AMES, J. The only warranty implied by law in the sale of personal property is simply that the vendor has good right to make the sale; and if the buyer desires to have the benefit of any further assurance, as to the property sold, he must protect himself by insisting upon such specific warranties as he may consider necessary for that purpose. The law does not undertake to make contracts for the parties, but usually leaves them, if the buyer should choose to act upon his own judgment, to the operation of the maxim *caveat emptor*. It is sometimes rather loosely said that mere silence, on the part of the vendor, as to a known defect, does not amount to a fraud. But this is far from being universally true. Deceit may sometimes take a negative form, and there may be circumstances in which silence would have all the legal characteristics of actual misrepresentation. There are cases in which it is laid down that in the sale of provisions for domestic use there is an implied warranty of their wholesomeness. *Van Bracklin* v. *Fonda*, 12 Johns. 468. *Emerson* v. *Brigham*, 10 Mass. 197. *Winsor* v. *Lombard*, 18 Pick. 57, 62. And it is perfectly well settled that there is an implied warranty, in regard to manufactured articles purchased for a particular use, which is made known at the time of the sale to the vendor, that they are reasonably fit for the use for which they are purchased.

It may perhaps be more accurate to say, that, independently of any express and formal stipulation, the relation of the buyer to the seller may be of such a character as to impose a duty upon the seller, differing very little from a warranty. The circumstances attending the sale may be equivalent to a distinct affirmation on his part as to the quality of the thing sold. A grocer, for instance, who sells at retail, may be presumed to have some general notion of the uses which his customers will probably make of the articles which they buy of him. If they purchase flour or sugar or other articles of daily domestic use for their families, or grain or meal for their cattle, the act of selling to them under such circumstances is equivalent to an affirmation that the things sold are at least wholesome, and reasonably fit for use ; and proof that he knew, at the time of the sale, that they were not wholesome and reasonably fit for use, would be enough to sustain an action against him for deceit, if he had not disclosed the true state of the facts. The buyer has a right to suppose that the thing which he buys, under such circumstances, is what it appears to be, and such purchases are usually made with a reliance upon the supposed skill or actual knowledge of the vendor. In the case at bar, the plaintiff bought the hay in small quantities, and the defendant must be considered as knowing generally the kind of use to which it was to be applied. The act of sale under such circumstances was equivalent to an express assurance that the hay was suitable for such use. If he knew that the hay had a defect about it, or had met with an accident, that rendered it not only unsuitable for that use, but dangerous or poisonous, it would plainly be a violation of good faith, and an illegal act, to sell it to the plaintiff without disclosing its condition. Silence in such a case would be deceit. *Langridge* v. *Levy*, 2 M. & W. 519. *Thomas* v. *Winchester*, 2 Selden, 397. *McDonald* v. *Snelling*, 14 Allen, 290, 295, and cases cited.

The declaration charges that at the time of the sale the defendant knew the condition of the hay. The *scienter* is not only a material, but a vital part of the case. It appears that he knew that paint, containing white lead, had been spilt upon the hay

and he must be taken to have known that hay in that condition was unwholesome and dangerous. He endeavored carefully to separate the damaged part from the rest, and supposed that he had been entirely successful in that endeavor. But after making all allowances in his favor, the fact remains that he sold, as food for cattle, an article which he knew had been exposed to poison, and which he had taken no effectual means to separate and purify from that poison. His knowledge of the accident was certain and positive; his belief of the success of his remedy for that accident was conjectural, uncertain, and proved to be wholly mistaken. It appears to us that, in venturing to sell the hay, under such circumstances, on his own judgment that it was safe to do so, he took the risk upon himself, and sold at his peril; and that the charge in the declaration, that he knew the condition of the hay when he sold it, is satisfied by showing that he knew what had happened to it; that he did not and could not know that the effect of the accident had been removed; and that he had in fact taken no effectual means to remove it. The ruling of the presiding judge appears upon this point to have been correct.

With regard to the duty incumbent on the plaintiff after the cow was found to be sick, the ruling was also correct, and as favorable to the defendant as he had any right to expect. There is nothing in the bill of exceptions to show that the plaintiff was informed of the fact that there was a competent veterinary surgeon within reach, or upon what terms his services could have been obtained, or whether any cure for the sickness was possible, and therefore the general instructions that were given appear to have been all that the case, in that respect, required.

*Exceptions overruled.*