THEODULE NEVEU *vs.* CHAUNCEY H. SEARS.

Bristol.    November 30, 1891. — January 6, 1892.

Present: ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Tort — Master and Servant — Negligence — Dangerous Materials.*

A mason employed in building a wall was furnished with stone blasted from a quarry at a distance, leased and worked by his employer. The blasting was done by inserting dynamite cartridges in holes drilled in the solid rock and exploding them by electricity; and the rock thereby detached was then split up by hand by workmen of the employer into blocks of a suitable size, and then brought by his teamsters to the wall. As the mason was trimming a block so furnished, an explosion resulted from a blow struck by him, and he was injured, and thereupon he brought an action against the employer for an alleged failure by him to use reasonable care in providing safe materials for the work. At the trial the evidence did not disclose the exact cause of the explosion. The judge refused to rule that the plaintiff could not recover on the evidence, and that there was no evidence that the defendant failed to exercise due care, and to give instructions based upon the theory that the negligence, if any, was the negligence of a fellow servant; and left the jury to say whether or

not, upon the knowledge which the defendant had of what had occurred in the process of quarrying, an inspection of the stone when it was appropriated to the plaintiff's work was necessary in the exercise of ordinary care on the part of the defendant to provide safe materials for the work. *Held,* that it was not necessary, in view of the alleged cause of action, to rule upon the question whether the quarrymen were the plaintiff's fellow servants; and that, on the evidence, the case was properly submitted to the jury.

TORT, to recover for personal injuries sustained by the plaintiff, on September 6, 1889, while employed as a mason by the defendant. The case was tried in the Superior Court, before *Hammond,* J., upon a common law count alleging a failure of the defendant to use reasonable care in providing safe materials for the plaintiff's work. There was evidence tending to prove the following facts.

The defendant was a contractor engaged for many years in building stone structures, at the time employing a large number of men as quarrymen, teamsters, masons, and laborers. For the purpose of getting stone he had leased a stone ledge or quarry in Fall River, called Hargraves Ledge, where he employed a force varying from twenty-five to sixty men, and had been getting stone therefrom for about two years before the accident. The stone was blasted out from the ledge by the use of dynamite. The process was to drill one or more holes in the solid rock with a drill about two and a half inches in diameter operated by steam. The dynamite was placed in the bottom of the holes in the form of cartridges eight inches long, one inch in diameter, and one or more in number. The upper cartridge or the one next to it was cut open, and an explosive cap was inserted, to which were attached wires extending out through the drill-holes. The wires were so connected as to make a complete circuit of all the holes, which were exploded simultaneously by an electric battery. After the discharge, if it was found that the dynamite in a hole had not exploded, a direct connection was made with the hole and the battery, and if it then failed to explode, the tamping and dynamite were siphoned out by injecting steam into the hole through a steam-pipe and hose attached to the boiler of the steam-engine. This method was pursued by order of the defendant, and was the best method known, and was regarded as the only absolutely safe method of clearing a hole of undischarged dynamite, as it not only

washed the hole clean, but destroyed the explosive property of
the dynamite, and if it was followed, no dynamite could re-
main in the stone. After the stone had been blasted out, it was
hoisted from the ledge in large pieces, by means of a derrick,
carted a short distance to an open space along a roadway near a
pond, and there split up into small pieces, suitable for the pur-
poses for which it was to be used, by hand-drilling, and without
the further use of dynamite. It was then loaded upon teams
and drawn away to the different places where the defendant
needed it in his various jobs.

The plaintiff was a mason about forty years of age, who had
been in the employ of the defendant about two months, work-
ing on different jobs, and at the time of the accident was en-
gaged with a number of other masons and other workmen in
building the stone walls of a boiler-house of the Cornell Mill,
about three quarters of a mile from the defendant's ledge.
About two months before the accident one Sullivan, the ledge
boss, by order of the defendant, had blasted out a large amount
of stone to be used in the construction of this boiler-house
and two or three other buildings on which the defendant was
engaged; and this stone was taken out, broken up, and carted
away as above described, but no quarrying was done while the
work at the mill was in progress. Sullivan then took part of
the ledgemen to the boiler-house and blasted out the cellar by
the use of dynamite, and was engaged in this while the plaintiff
was at work upon the wall, although it was in dispute whether
any blast was ever exploded while the plaintiff was present.
The stone blasted at the boiler-house was not of the same kind
as that brought from Hargraves Ledge. At the time of the acci-
dent the masons were under the special charge of one Fleming;
but Sullivan, while at the boiler-house, had general charge of all
the men working at the boiler-house and also of the teamsters
who brought the stone from the ledge and of the ledgemen at
work in the quarry, and directed the men at the ledge what sort
of stone to get out, and also the teamsters what sizes of stone to
bring. Dynamite cartridges similar to those used at the ledge
were kept and used at the boiler-house. All the men at work
on the boiler-house, at the quarry, and in drawing the stone,
were hired and paid by the defendant, who shifted them from

one place to another as was necessary or expedient. The plaintiff, while at work on the boiler-house as a mason, came down from the staging to get a stone which he needed in building part of the wall, and selected one about two or three feet long, eighteen inches wide, and eleven or twelve inches thick, which was part of a load brought a short time before the accident by one of the defendant's teamsters from the Hargraves Ledge and deposited near the wall, and which was lying flat, either on the ground, or about ten inches from the ground on other stones that had been unloaded there already. He did not turn the stone over to examine it, but saw nothing wrong or peculiar about it, and saw no drill-hole or cartridge. He first measured the stone and then began to trim it; at the first blow he struck, which was on the top two or three inches from the edge, the stone exploded and was blown to fragments, causing his injuries.

There was also evidence that just before the accident, and after the stone had been unloaded, another mason, who was called as a witness, had turned it over and broken off a piece of it, but neither he nor the teamster who brought the stone from the pond saw any hole or explosive in it; and that dynamite cartridges were kept under the control of Sullivan near the place where the plaintiff was at work, and that, if a cartridge had been under the stone when the plaintiff struck it, the blow would have caused it to explode; but there was no evidence that any person had placed a cartridge there. There was also evidence that dynamite will not explode when frozen; and there was testimony, which was contradicted, that at different times within a year before the accident two unexploded cartridges had been found remaining in the ledge and in a quarried block at the Hargraves Ledge and shown to Sullivan. There was also evidence that it was not the custom among owners of quarries to examine stones as they leave the quarry to ascertain whether any explosives remain in them.

At the close of the evidence, the defendant asked the judge to make the following rulings:

"1. Upon the whole evidence the plaintiff is not entitled to recover.

"2. There is no evidence that the defendant failed to exercise due care.

" 3. If the injury was due to the neglect of a fellow servant, the plaintiff is not entitled to recover.

" 4. It is not necessary for persons to be fellow servants that they should be engaged in doing the same kind of work at the same time and place. They may be employed in different departments of duty, and in doing dissimilar acts at different times and places; but if they are laboring for a common master in a common business, and co-operating to accomplish a common result, then they are fellow servants, and the master or employer is not liable for an injury sustained by one while so employed from the negligence or carelessness of a fellow servant.

" 5. The injury in this case occurred through the neglect or carelessness of a fellow servant and the plaintiff is not entitled to recover.

" 6. If the dynamite or other substance that caused the explosion was placed or left in or on the stone by the carelessness or neglect of some one employed in the ledge or quarry, or during the progress of the work, then the accident was due to the carelessness or neglect of a fellow servant, and the plaintiff cannot recover."

The judge refused so to rule, and instructed the jury substantially as follows:

" It. was the defendant's duty to use reasonable care in the selection of materials to be used upon that job. It was not his duty to warrant that the materials were right; . . . but he simply agreed, the law says, by that contract to use reasonable care with reference to the materials; such care as an ordinarily prudent man would exercise under the circumstances. . . . Now, when and where are you to apply that care in this case? If, when the time comes for that care to be exercised, that care is exercised, and the materials are placed in the hands of the workmen engaged in that job, then he has done his duty, even although an accident may happen to the workman, the servant. . . . What was the material? A stone. At what time must the master use reasonable care? At the time he selects it for the job; at the time he procures it for the job. If it is among other materials which he has, it is the time that he appropriates it to the job. When was this stone appropriated to the job? When it was selected from the mass of stone and put

upon the team, with directions to the team to go to the Cornell Mill. That is the time when the master is to be held to the exercise of due care. If you find there was any earlier time when it was appropriated to the job, then that is the time when the master is to be held, — when he appropriates it, when he sets it going towards the job ; because I instruct you that, so far as this case is concerned, the teamster who is carting the stone to the job is engaged in the construction of that wall equally with the mason. When the master puts the stone to be taken by those engaged in the same job, then is the time when the master exercised whatever care is to be exercised about it. Therefore assume that, as that stone lay there as it was about to be taken upon the cart for the job, that is the time when the master is to be held liable for proper care about the stone. Now what would an ordinarily prudent man do about that stone, knowing what the defendant knew with regard to the manner in which it had been quarried ? The defendant knew that dynamite had been used ; he understood the manner in which it was used. He had there a system, under which it is conceded by the plaintiff, if it had been followed, no dynamite could be presumed to be in any stone after it had left the quarry. Now, he is the man to examine that stone when he puts it upon the team ; or if he is not there, if it is examined by anybody else, he is responsible ; it is the examination for which he is responsible. Consider the defendant upon the spot as the stone is loaded ; what would you expect him as an ordinarily prudent man to do ? Had he any reason to think, seeing the stone as it went upon the load, that there was dynamite there ? He is not to be held for the negligence of Sullivan, if you find Sullivan was negligent, unless he had reason to believe, exercising proper care over his business, that the system which he had adopted had been carelessly managed. It is not for the act of Sullivan in quarrying that you are to hold the defendant liable, unless the defendant had reason to believe, or if he had exercised proper supervision over that business would have known or had reason to believe, that Sullivan had been careless. . . . You will therefore see, at the time this stone was appropriated for this job, whether the defendant, knowing what he knew about the quarry or what he ought to have known if he had taken proper care of his business,

whether there was no need of any more inspection of that stone, or whether in allowing the stone to be put upon the cart without any further inspection he was guilty of carelessness.

" I have heretofore spoken of the case as one where dynamite was in the stone. Nobody saw, so far as I know or so far as it is claimed on the evidence, any such thing in the stone. It is argued to you by the defendant, that therefore you cannot find that there was any such thing there. But in this, as in all other matters, you are to use your reason. I do not understand it to be claimed by the defendant that stones are naturally explosive, but I understand that dynamite, if it remained in the stone and was exploded by the blow, as it might have been, would be a sufficient cause to account for what actually occurred. It is one of those cases of circumstantial evidence. The explosion itself destroyed all evidence absolutely of its cause. On the question whether it was caused by dynamite in the stone, you are to consider the probabilities, circumstances with reference to it; and if, taking all the circumstances into consideration, you find that the most reasonable theory with reference to the cause of that explosion was the existence of dynamite in the stone, of course you will be justified as sensible men in coming to that conclusion, although nobody ever saw it there so far as you know."

The jury returned a verdict for the plaintiff, and the judge reported the case for the determination of this court. If the judge erred in his rulings, the verdict was to be set aside; otherwise, the verdict was to stand.

*A. J. Jennings*, for the defendant.

*J. W. Cummings & H. A. Dubuque*, for the plaintiff.

BARKER, J. 1. The stones with which the plaintiff was to build the wall were furnished by the defendant from a storage ground where he was accustomed to deposit the product of his quarry in large blocks, quarried by the use of dynamite. At the place of deposit the blocks were split by hand drilling and the use of wedges, and the pieces loaded upon teams and sent to different localities, for use upon distinct contracts for work. This practice had been followed for two years, during the last two months of which only the plaintiff had been in the defendant's employ as a mason. It did not appear at what time the

particular stone on which the plaintiff was at work was quarried, or when it was taken to the place of deposit, or split from the quarried block. On the day of the accident it was brought with others to the place where the plaintiff was at work, and there unloaded for use. There was no evidence that it had been quarried for the specific structure on which the plaintiff worked, and no quarrying was done while that structure was in process of construction. Whether, under these circumstances, the quarrymen at the ledge were fellow servants with the plaintiff, is a question upon which we express no opinion, and which it was not necessary for the justice presiding at the trial to decide, although rulings upon the point were requested by the defendant, for the reason that the cause of action relied on was an alleged failure of the defendant to use reasonable care to provide safe materials for the plaintiff's work. If the defendant failed in that specific duty, it was immaterial to the case how the materials negligently furnished became dangerous. The third request, considered as a general proposition of law, was embodied in the charge, and the fourth, fifth, and sixth requests were, for the reason stated, properly refused.

2. We are of the opinion that there was evidence for the jury that the defendant failed to use reasonable care to furnish safe material for the plaintiff's work. The jury were entitled to consider matters of common knowledge with the evidence, and to draw reasonable inferences from the whole. *Doyle* v. *Boston & Albany Railroad*, 145 Mass. 386. The stone which the plaintiff was about to trim was two or three feet long, eighteen inches wide, and eleven or twelve inches in thickness. The evidence tended to show that it had been recently brought with others from the storage ground, and unloaded beside the road near the wall; that it was lying flat, either upon the ground or upon other stones about ten inches from the ground; that after it was unloaded it had been turned over and a piece broken off from it by another mason, who was called as a witness, as was the teamster also who had brought and unloaded the stone, and who was only a little way off when the accident happened; that the plaintiff measured the stone, but did not turn it over to examine it, and saw no drill-hole or cartridge, and nothing wrong or peculiar about it; that he struck it one blow on the top, two

or three inches from the edge, when there was an explosion which demolished the stone and caused his injuries. The method used at the quarry of exploding by electricity dynamite cartridges in holes drilled in the ledge, was detailed in evidence, with the system and appliances used to ascertain whether all cartridges in the holes had been exploded, and to remove those found unexploded; and this method of removal is claimed by the defendant to be certainly effectual, if used. There was also evidence tending to show that, at times during the two years in which the defendant had worked the quarry, unexploded cartridges were found remaining in the ledge and also in quarried blocks, notwithstanding the means used to discover and remove them; and that dynamite will not explode when frozen; also that dynamite cartridges were in use in excavating the cellar of the building while the plaintiff was employed upon the walls; but the superintendent testified that he alone had charge of those cartridges, and that they were not brought there by the men who brought the stone, and his evidence tended to show that the accident was not due to the cartridges kept for use in excavating the cellar.

It is not of the nature of stone to explode when struck. The accident itself established the fact that some other and explosive material was affected by the plaintiff's blow. It was competent for the jury to find from the evidence that no explosive was placed there by the teamster, or by the other mason who handled the stone, or by the superintendent, or purposely by any one. We cannot as matter of law say that it was not a reasonable inference that a dynamite cartridge, placed in a drill-hole in the ledge in the process of quarrying, remained in the stone and was exploded by the plaintiff's blow, nor that such was not the inference most consistent with the evidence.

3. We see no error in the instructions given to the jury, and they sufficiently cover the requests asked by the defendant, so far as those requests were correct in principle. All the things which it was necessary for the plaintiff to establish were stated, and the rules which define the defendant's duty to the plaintiff were correctly given. The defendant must be charged with knowledge of those facts as to the use of dynamite in his quarry which he either knew or ought to have known. *Gilman* v. *East-*

*ern Railroad*, 13 Allen, 433, 440. *French* v. *Vining*, 102 Mass. 132, 137. *Commonwealth* v. *Pierce*, 138 Mass. 165, 179, 180. His employment of competent quarrymen, and his furnishing them with proper means of preventing any dangers consequent upon the use of dynamite, would not justify him in relying upon an actual want of knowledge that there had been carelessness at the quarry as an excuse for furnishing a dangerous stone for the plaintiff's use, if, knowing all that had happened at the quarry, he would then have had reason to believe that unexploded cartridges might remain in the blocks removed to the storage ground, and in the stones split from them.

The jury could not have understood the instructions to mean, as is now contended by the defendant, that he was at all events bound to examine the stone for dynamite at the time it was loaded upon the wagon, or first appropriated to the work on which the plaintiff was engaged. They were left to say whether or not there was need of such an examination, upon the knowledge which the defendant had or ought to have had of what occurred at the quarry, and were instructed to hold the defendant only to such care as an ordinarily prudent man, with such knowledge, ought to use with reference to stones coming from such a quarry; and they were told in substance that the defendant was not to be held responsible for the consequences of the carelessness of his quarrymen, unless, in the exercise of proper care over his business, he had reason to believe that the system which he had adopted at the quarry had been carelessly managed.

As the rulings of the court were correct, by the terms of the report the verdict is to stand.

*Judgment on the verdict.*