CASE 45—ACTION BY ALBERT R. CLARK AGAINST COVINGTON SAWMILL & MFG. CO. TO RECOVER DAMAGES FOR PERSONAL INJURIES.— OCT. 16.

# Covington Sawmill and Mfg. Co. v. Clark.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  AFFIRMED.

MASTER AND SERVANT—PERSONAL INJURIES—SAWMILLS—FELLOW SER-
VANTS—INSPECTOR—PETITION—ALTERNATIVE  AVERMENTS—DEFEC-
TIVE PLEA—CURE BY VERDICT—LIABILITY OF MASTER.

Held:   1. Plaintiff, who was employed in a sawmill in setting the
"dogs" in a log to hold it firmly on the saw carriage, was not
a fellow servant with one whose duty it was to inspect the logs
before they came to the carriage for the purpose of removing
spikes driven in the logs for rafting, and if the negligence of
such person resulted in the breaking of a saw, injuring plaintiff,
he might recover.
2. In an action for injuries received from the breaking of a saw
the complaint was not defective for averring in the alternative
that defendant was guilty of negligence either in running the
saw too rapidly, or because of some iron being in the logs, or
because of some defect in the saw, and that defendant was
negligent in not remedying the defect in the saw or timber.
3. Though the averments as to the existence of iron in the log, which,
on trial, proved to have been the cause of the accident, were
meager, the defect was cured by verdict.
4. If a log, the sawing of which broke a saw and injured an em-
ploye, had been inspected by the employer's inspector, and he

Covington Sawmill & Mfg. Co. v. Clark.

failed to exercise such care as is ordinarily exercised by ordi-
narily careful persons under the same circumstances, and the
injury resulted solely from such want of care, plaintiff was en-
titled to recover.

ROBERTSON & BUCHWALTER, JAS. W. BRYAN AND S. D.
ROUSE, ATTORNEYS FOR APPELLANT.

This is an appeal from a judgment of the Kenton Circuit
Court, wherein the plaintiff, now appellee, obtained a judgment
against the defendant, now appellant, for $5,000, for the loss
of a leg, caused by the breaking of a saw in appellant's mill, the
appellant being a manufacturer of lumber.

Appellee was an employe of appellant, was one of a sawing
crew, and known as a "dog-setter," whose duties consisted in
throwing the "dogs," which were hooks or braces, worked by a
lever, and which were fastened in the log after it had been put
upon the saw carriage, for the purpose of holding it firmly in
position as the carriage ran the log into the saw. The saw car-
riage consisted of a platform —— feet long and —— feet wide,
along the top of which, lengthwise, was a large spiral or spring,
the purpose of which was to draw the carriage back after it had
run through the saw. The proper movement of the "dog-setter"
was to step over this spring, set his "dogs" with the lever, and
then step back toward the outside of the carriage and over the
spring, remaining outside the spring while the carriage was
moving the log through the saw. The appellants operated a
belt or band saw on pulleys one above the other.

The logs, which were being used in the mill at the time the in-
jury happened, were river logs, brought in rafts from West
Virginia and the Big Sandy, down the Ohio River. Such logs
are cut on the hill sides, and in the fastnesses of the mountains,
dragged down by means of ropes or chains fastened to spikes
or staples driven into the logs, to the creeks and tributaries of
the Sandy, rafted at Catlettsburg; the rafts are broken up, and
are re-rafted by means of chain-dogs and "ties;" a "chain-dog"
is either an old horseshoe or two iron spikes six inches long,
connected at one end by a chain consisting of five or six links of
ordinary length; a "tie" is a pole eight, ten or twelve feet long.
A number of logs are floated evenly together, and these "chain-
dogs" are driven into the outside log, fastening down one end
of a "tie," which extends across the logs lying in the water, and
the other end of the "tie" is fastened down in a similar way.
Thus the rafts are made up of the logs in the manner indicated,

Covington Sawmill & Mfg. Co. v. Clark.

and are floated down the Ohio to the various mills. When the raft reaches the boom of the mill where the logs are to be sawed, the rafts are again broken up by employees of the mill company which is to use them. By the various different movements of the log from the time it is cut on the mountain until the time it reaches the mill, in the manner indicated, a dozen different pieces of iron may have been driven into it, and in moving the logs on the mountain side, floating them to the river through the creeks, making the rafts, breaking them up, re-rafting them, catching them when the rafts happen to be broken by storm or flood, and by the various other casualties and incidents which usually happen before a log finally reaches the mill where it is to be sawed, one, two, or sometimes three, four, or five pieces of spikes, tips of "iron-dogs" or other nails, are left in the log, sometimes the end projecting above the surface, but more frequently the iron obstruction is broken off in the log beneath the surface and is invisible to the eye. When the raft is finally broken up at the mill, the men at the river take out all the chain dogs which they see, and cut out all the iron which is visible, or which they know is imbedded in the wood. The logs in appellant's mill are then put upon the car running up the bank from the river to the mill floor, an inspector or "iron-hunter," who for a part of the time has an assistant, goes over the log with a pick, in appearance and size resembling an ordinary ice pick; wherever there is a bruise or scar on the log, or a spike hole visible, the inspector feels for iron with the pick above described, and if he finds any iron it is immediately cut out, before the log is turned over to the saw crew.

It frequently happens after a spike has been broken off in a log, maybe at Catlettsburg, but probably at the headwaters of Sandy, or perhaps in Wolf creek or Pigeon fork, the log remaining in the water the spike hole closes up, or becoming the same color as the surrounding surface of the log is not perceptible or the spike or iron may have been in the tree for years and then the wood has grown around it, and the outside surface does not in even the faintest way reveal its presence. In such cases the log goes to the saw, past the men breaking the raft at the river, past the inspector or "iron-hunter" to the saw, and then when the saw comes into contact with the iron, it may be that the foreign substance is thrown out without damage, it may be that three or four teeth are broken, and it may be that the saw flies into pieces. Sometimes one saw is broken in a log, sometimes two, and even a dozen; again, a saw may not be broken in a week; sometimes a saw strikes an obstruction once in a

log, and some times three or four times, and again an obstruction may not be encountered for six or eight days.

On the day of the accident the saw struck something, conceded to be a piece of iron, and broke; the jagged, broken end ran under the log, struck Clark's leg and cut it off, and stopped at, or two or three inches from and on, the log side of the shaft or spring elsewhere described.

There were two trials of the case in the court below, the first trial resulting in a verdict for defendant upon the peremptory instruction of the court. The court granted the appellee motion for a new trial, and set aside the verdict and judgment. The second trial resulted as heretofore stated.

## BRIEF OF THE ARGUMENT.

The appellant complains:

First, that the court erred in setting aside the verdict rendered at the first trial in the case.

Second, that the verdict on the second trial can not be sustained by the petition in the case.

Third, there was no proof authorizing the case to go to the jury, and in this connection the fellow-servant rule will prevent a recovery.

Fourth, the injury arose from one of the risks of the employment.

Fifth, the court should have given peremptory instruction to find for defendant in the second trial.

Sixth, error of law in the instructions to the jury at the second trial.

## AUTHORITIES CITED.

Shearman & Redfield on Negligence, 5th ed., secs. 57, 185, 211; Daniels v. The Met. R. R. Co., L. R., 36, 216; Hayes v. Mich. Cent. R. R. Co., 111 U. S., 228; Phila. R. Co. v. Stebbing, 62 Md., 504; De Graff v. N. Y. Cent. R. R. Co., 7 N. Y., 125; Illinois Cent. R. R. Co. v. Hilliard, 99 Ky., 684; C. & O. R. R. Co. v. Thieman, 96 Ky., 507; Bogenschutz v. Smith, 84 Ky., 330; L. & N. R. R. Co. v. Coppage, 7 Ky. Law Rep., 527; Dean v. Dean's Admr., 8 Ky. Law Rep., 419; Royal Ins. Co. v. Smith, 8 Ky. Law Rep., 521; Thurston v. Davis, 5 Ky. Law Rep., 179; L. & N. R. R. Co. v. Taylor, 92 Ky., 55; Needham v. L. & N. R. R. Co., 85 Ky., 423; Hooper v. Snead Iron Works, 12 Ky. Law Rep., 483; L. & N. R. R. Co. v. Hinder, 16 Ky. Law Rep., 841; L. & N. R. R. Co. v. Vestal, 12 Ky. Law Rep., 1288; Green

Covington Sawmill · & Mfg. Co. v. Clark.

v. Willingham, 8 Am. Neg. Rep., 193; Volz v. C. & O. R. R. Co., 95 Ky., 188; Baxter's Admr. v. Parker, 58 N. Y., 190; Hogan v. Smith, 125 N. Y., 774; Cullom v. Norton, 126 N. Y., 1; Whittaker v. Bent, 167 Mass., 588; Rogers Locomotive Wks. v. Hand, 14 Atl. Rep., 168; Machin v. Boston & A. R. R. Co., 135 Mass., 201; Holden v. Fitchburg R. R., 129 Mass., 268; Kenney v. Hingman Cordage Co., 168 Mass., 279; McAuliffe v. Gale, 11 Am. Neg. Rep., 6; Lamson v. American Axe & Tool Co., 177 Mass., 144; Corrigan v. Washburn &. Moen Mfg. Co., 170 Mass., 70; Haley v. Jump River Lumber Co., 81 Wis., 412; R. R. Co. v. Simmons, 21 Ky. Law Rep., 44; Neven v. Sears, 155 Mass., 303; R. R. Co. v. Fitzpatrick, 42 O. S., 318; R. R. Co. v. Webb, 12 O. S., 475.

H. D. GREGORY AND B. F. GRAZIANI, ATTORNEYS FOR APPELLEE.

.We contend:

1. The iron-hunter was not a fellow-servant of appellee (dog-setter).

2. It was the duty of the master to furnish sound and safe materials for its servants to work upon.

3. The master is also personally bound from time to time' to inspect and examine all instrumentalities furnished by him and to use ordinary care to keep them in good condition.

4 Appellee's petition was good, charging in the alternative that he was injured by the saw running too rapidly, or because of some iron being in the log, or because of some defect in the saw; that one of said causes was true, but which one he was unable to state.

We submit that the evidence in this case shows conclusively that there was iron in the log which was the approximate cause of the breaking of the saw and the injury to plaintiff by cutting off his leg.

And that the master permitted the work to be done at the time plaintiff was injured so rapidly that the inspector or iron-hunter did not and could not locate the iron in the logs.

5. The master can not evade his personal duty to furnish his servant sound and safe material by saying that the employe assumed the risk.

6. The instructions given by the court to the jury were proper, and those asked by defendant were properly refused.

### AUTHORITIES CITED.

Shearman & Redfield on Negligence, 5th ed., secs. 194, 194a, 185b, 204, 58, 59, 223, 185a, 213 and 186; Black's Law Dictionary,

Covington Sawmill & Mfg. Co. v. Clark.

p. 760; C. C. C. & St. L. Ry. Co. v. Ward, 45 N. E. Rept, 325; Ill. Cen. Ry. Co. v. Hillard, 99 Ky., 686; L. & N. R. R. Co, v. Collins, 2 Duvall, 117; L. & N. v. Semones, 21 Ky. Law Rep., 444; Neven v. Sears, 155 Mass., 307; Dean v. Dean ,8 Rep., 419; Royal Ins. Co. v. Smith, 8 Rep., 521; McDowell v. Linnville, 6 Rep., 304; L. & N. R. R. v. Taylor, 92 Ky., 55; Huston v. Brush, 66 Vt., 331; Belle of Nelson Distilling Co. v. Riggs, 20 Ky. Rep., 499; L. & N. v. Vestal, 20 Ky., 1290; Ohio Valley Ry. Co. v. McKinley, 16 Rep., 445; Promer v. Milwaukee & C. R. Co., 90 Wis., 215; 63 N. W., 90.

Opinion of the court by JUDGE BARKER—Affirming.

The appellee, Albert R. Clark, recovered a judgment in the Kenton circuit court against the appellant, the Covington Sawmill & Manufacturing Company, for the sum of $5,000, as damages for the loss of a leg, caused by the breaking of a saw in appellant's mill. Appellee was in the employ of appellant, occupying the position of "dog setter," whose duties consisted in adjusting the "dogs," which were iron hooks or braces, fastened in the log after it had been put upon the saw carriage for the purpose of holding it firmly in position as the carriage conveyed it to the saw. There is little or no contrariety in the evidence as to how the accident occurred. At the time of the injury a log had been placed upon the carriage, "the dogs" had been set by appellee, and while it was in process of being run through the mill the band saw struck a piece of iron, which was concealed in the log, with such force as to break the saw, which, being rapidly whirled around by the moving machinery, struck appellee, who was standing near by, upon the leg, completely severing that member. It seems that the logs which were being sawed by appellee had been rafted down the Big Sandy and Ohio rivers. Logs in raft are held together by means of ropes and chains fastened to iron spikes or staples driven into them. When

the raft is broken up for the purpose of manufacturing lumber, it is necessary, for the safety of those engaged in sawing, as well as for the protection of the machinery, that a careful search be made by an inspector, who is called an "iron hunter," in order to locate and remove any iron spikes left in the logs. For this purpose the "iron hunter" goes over the logs with a pick, in appearance and size resembling an ordinary ice pick. Wherever there is a bruise, or scar, or a spike hole visible, the inspector feels with his pick for iron, and, if he finds any, immediately cuts it out, before the log is turned over to the saw crew. It sometimes happens that, after a spike has been broken off in the log, the hole closes over it, under the influence of the water, making its discovery difficult. Should the inspector fail to discover a concealed spike, and the log is put upon the carriage to be sawed, there is always danger of breakage to the saw and to the lives of those in charge. At the time of the accident to appellee the saw struck a piece of iron spike which the inspector had failed to discover, with the result, as said before, of the loss of his leg. Upon the first trial of this case the court gave a peremptory instruction to the jury to find for the defendant. Afterwards, upon motion of appellee, a new trial was awarded, and on the second trial the jury rendered a verdict in favor of appellee, awarding him damages in the sum of $5,000, of which the appellant now complains.

The peremptory instruction given by the trial judge was evidently based upon the theory that the "iron hunter" and the "dog setter" were fellow servants. Upon a reconsideration of this proposition, however, he seems to have changed his opinion, and consequently awarded appellee a new trial. The "iron hunter," or inspector, was not a fellow servant with appellee in the sense that precludes the latter recov-

ering damages from their common employer for the negligence of the former. Shearman & Redfield, in their work on the Law of Negligence (5th Ed.) section 194, say: "The master personally owes to his servants the duty of using ordinary care and diligence to provide for their use reasonably safe instrumentalities of service. Among these are a reasonably safe place in which to do their work or to stay while waiting orders, reasonably safe ways of entrance and departure, an adequate supply of sound and safe materials, implements, and accommodations, with such other appliances as may reasonably be required to insure their safety while at their work or passing over his premises to or from their work. These things must, moreover, be adapted to the work in hand. It is not enough that they should be good under ordinary conditions. They must be suitable to the work to which they are applied by the master, and properly adjusted to each other. If, therefore, the master knows, or could have known if he had used ordinary care to ascertain the facts, that the buildings, ways, machinery, tools, or materials which he provides for the use of his servants are unsafe, and a servant, without contributory fault, suffers injury thereby, the master is liable therefor; although he is not thus liable in the absence of actual or constructive notice. The master is not entitled to time to discover defects in things which are defective when put in use. He can not evade his responsibility in these respects by simply giving general orders that servants shall examine for themselves, before using the place, materials, etc., furnished by him. . . ." Section 194a: "The master is also personally bound from time to time to inspect and examine all instrumentalities furnished by him, and to use ordinary care, diligence, and skill to keep them in good and safe condition. The duty

of inspection is affirmative, and must be continuously ful-filled and positively performed. Such duty is not dis-charged by giving directions for its performance, or by promulgating rules requiring it to be performed, or by em-ploying competent and careful persons for that purpose. . . ." Section 204: "None of the duties which have been previously stated as devolving upon the master per-sonally can be by him delegated to any agent, so as to re-lieve him from personal responsibility. He may, and often must, delegate the performance of such duties to subordi-nates; but he remains responsible to all his servants for the acts of these subordinates in that particular capacity, to the same extent as if those acts were literally his own. This has been repeatedly adjudged as to his duty in the se-lection and dismissal of servants, in providing, inspecting, and repairing materials and appliances, in warning serv-ants of special dangers, and in framing rules." The same doctrine is held in an admirably reasoned opinion in the case of Neveu v. Sears, 155 Mass., 303, 29 N. E., 472. In that case the plaintiff was engaged in building for the de-fendant a wall, using large blocks of granite furnished by the latter, and which had been quarried by the use of dyna-mite. On the occasion of the plaintiff's injury, a dynamite cartridge, by oversight, had been left buried in a block of the granite, and the plaintiff, in preparing it for use in the wall, struck it with a hammer, whereby the cartridge was exploded, seriously injuring him. The court said: "We see no error in the instructions given to the jury, and they sufficiently cover the requests asked by the defendant, so far as those requests were correct in principle. All the things which it was necessary for the plaintiff to establish were stated, and the rules which define the defendant's duty to the plaintiff were correctly given. The defendant must be-

charged with knowledge of those facts as to the use of dyna-
mite in his quarry which he either knew or ought to have
known. Gilman v. Eastern Railroad Co., 13 Allen, 433,
440, 90 Am. Dec., 210; French v. Vining, 102 Mass., 132,
137, 3 Am. Rep., 440; Commonwealth v. Pierce, 138 Mass.,
165, 179, 180. His employment of competent quarrymen,
and his furnishing them with proper means of preventing
any dangers consequent upon the use of dynamite, would
not justify him in relying upon an actual want of knowl-
edge that there had been carelessness at the quarry as an
excuse for furnishing dangerous stone for the plaintiff's
use, if, knowing all that had happened at the quarry, he
would then have had reason to believe that unexploded
cartridges might remain in the blocks removed to the stor-
age ground and in the stones split from them." In the
case of Louisville & Nashville Railroad Company v. Se-
mones, 21 R., 444, 51 S. W., 612, which was an action for
personal injury by a servant against his employer, the fol-
lowing instruction, given by the court below, was ap-
proved by this court:: "The court instructs the jury that
it was the duty of the defendant to furnish the plaintiff and
his co-laborers, who were then and there engaged with
him in putting the timber in the trestle at washout No. 1,
with timber suitable to be handled by its employes, and to
use reasonable care to see that it was free from such de-
fects as would make the handling of the same, with ordi-
nary care, free from danger; and if they believe from the
evidence that the defendant, its agents and servants then
in charge of said work, knew, or by the exercise of ordi-
nary care could have known, that the timber which was put
in said trestle was in such a defective and dangerous con-
dition as to make its handling by the plaintiff hazardous
and dangerous, and that the injury to the plaintiff was

caused by the failure of the defendant to furnish timber reasonably free from such defects as would make the handling of same reasonably safe, considering the circumstances under which it was being handled, the law is for the plaintiff. . . ." In the case at bar the employer knew that the logs furnished by it to its employes were liable to have concealed in them iron spikes, the existence of which made their handling during the process of being sawed extremely hazardous, and, recognizing this danger, it employed an inspector, whose duty it was to examine the logs carefully, so as to discover and remove these elements of danger. This inspector was not a fellow servant, within the technical rule, of the sawyers. He was a vice principal, discharging for the master the high duty of furnishing to the other servants safe material upon which to work. The master could not evade its responsibility by delegating the discharge of this duty to a competent servant. It was the duty of the employer to use ordinary diligence to make the logs reasonably safe for the use of the sawyers. When it delegated this duty to an inspector, it was his duty to exercise reasonable diligence to discover and remove any iron spikes, which might be concealed in the logs. This proposition is clearly within the pale of the authorities we have cited to sustain it, and we feel that it is consistent with both reason and justice.

Appellant further claims that the petition is defective, and will not support the verdict. The petition, after setting out in detail the facts of appellee's employment and duties, says that: "While in the discharge of his duty on or about the 31st of May, 1900, the defendant, with gross negligence, caused said saw either to run too rapidly in said log or timber, or because of some iron being in said log or timber, or because of some defect in said saw—one of:

these said causes being true, but which one the plaintiff is unable to state—said saw suddenly twisted, bent and broke, and ran through said log in a direction opposite to where it was intended, striking the plaintiff in the leg, and cutting the same off. The plaintiff charges the defendant with gross negligence in not properly remedying the defect either in said saw or in the timber, or in the manner in which said sawing was done; that all of said defects were unknown, to the plaintiff, but were known, or could have been known by the use of ordinary care, by the defendant." Appellee had the right to allege the causes of his injury in the alternative, as he did. Upon the trial it developed that the cause of his injury was the existence of iron in the log he was sawing, so that, for the purposes of the trial, the petition should be read leaving out the other alternative allegations. When so read, undoubtedly the allegations of the cause of the injury are exceedingly brief, if not scant and meager. While the pleading is certainly very inartistically drawn, we think that its defects were cured by the verdict. Newman, in his work on Pleading and Practice (page 739), thus declares the rule on this subject: "The verdict will not aid a defective allegation, but it extends sometimes even to cure an omission altogether to make a necessary allegation. Where there are defects or imperfections in the pleading, yet the issue raised is such as necessarily requires on the trial the proof of the facts defectively or imperfectly stated, or even omitted, and without which it is not reasonable to presume that the jury would have given a verdict for the party, such deficiency is cured by the verdict." The evidence in this case, under principles which we deem sound, was sufficient to warrant the submission of the question of negligence to the jury. Whether or not the inspector could, by the exer-

cise of ordinary diligence, have discovered the iron which caused the injury, was the province of the jury to determine; and, as they determined it adversely to appellant, it only remains to ascertain whether or not the law was properly given by the court.

Instruction No. 1, which is the only one complained of, is as follows: "If the jury believe from all the evidence that the log upon the carriage at the time of the injury to plaintiff, and mentioned in the proof, was, immediately before it was placed upon said carriage, inspected or examined by an employe of defendant company, known as an 'inspector' or 'iron hunter,' and if the jury believe that in making said inspection or examination the inspector or 'iron hunter' failed to exercise such care as is ordinarily exercised by ordinarily careful and prudent persons under the same or similar circumstances, and in the same or similar business, and that the injury to plaintiff resulted solely from said failure of said inspector or 'iron hunter,' and that the plaintiff, at the time and place of the said injury, and in the discharge of his duties, exercised such care as is ordinarily exercised by ordinarily careful and prudent persons under the same or similar circumstances, and in the same or similar business, then the jury should find a verdict for the plaintiff; otherwise the jury should find a verdict for the defendant." This is in harmony with the authorities we have cited, and seems to us to fully state the law governing this case.  It does not make the employer insure the safety of the employe, but only holds it to the exercise of ordinary diligence in supplying reasonably safe material for the use of the latter, which, as said before is consonant with both reason and justice.

The judgment is affirmed.

Petition for rehearing by appellant overruled.