RICHARD GIROUX vs. PHINEAS STEDMAN & another.
MARY GIROUX vs. SAME.
JOSEPH PECORD vs. SAME.
MARY GIROUX vs. SAME.

Hampden.    Sept. 27, 1887. — Jan. 4, 1888.    C. ALLEN & HOLMES, JJ.,
absent.

If a farmer, not a dealer in provisions, kills a hog and sells it, knowing that the purchaser intends to eat it, there is no implied warranty on the seller's part that the hog is fit for food.

FOUR ACTIONS OF TORT. The declaration in the first case was as follows: " And the plaintiff says the defendants solicited him to purchase from them a certain quantity of meat to be used as and for provisions for himself and others; that said meat was unwholesome, corrupted, tainted, and unfit to be used as provisions; that said defendants, well knowing said meat to be unwholesome, tainted, and corrupted, and unfit and improper meat to be used as provisions, were bound to give the plaintiff notice and information of said unfit, unsafe, and tainted condition of said meat, and were bound to tell the plaintiff that said meat was improper meat to be used as and for provisions for himself and others. But said defendants improperly, negligently, and wrongfully failed and neglected to give the plaintiff such notice or information, and failed and neglected to tell the plaintiff that said meat was improper to be used for provisions, and the plaintiff purchased said meat and ate thereof and was made sick thereby for a long period of time, to his great damage." The declaration in each of the other cases was similar. The answer in each case was a general denial.

Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions, which, after stating that the pleadings formed a part thereof, proceeded in substance as follows:

The plaintiffs claimed to have purchased from the defendants certain provisions, namely, certain quantities of dressed pork; that said pork was tainted and unfit for food; and that they ate of said pork and were made sick thereby.

The evidence showed that the defendants were farmers carrying on a farm in Chicopee, and jointly interested in raising pigs;

that, about the middle of September, 1885, the defendants found that an infectious disease, known as hog cholera, existed upon their farm, and that their entire herd had been exposed to the disease; that on October 3, 1885, the defendants killed two of their hogs, dressed them, and sold one half of one of them to the plaintiff Richard Giroux, and one half of the other to the plaintiff Joseph Pecord; and that, on October 5, the defendants killed and dressed two other hogs, one of which was sold to the plaintiff Pecord.

The evidence showed further, that, at the time of the several sales to the plaintiffs, no representations as to the quality of the meat were made, and no notice was given to the plaintiffs, at the times of the sales, of the existence of the disease among the herd owned by the defendants; but it appeared that the defendants knew at the time of the several sales to the several plaintiffs that the meat so sold by them to the plaintiffs was to be used by the plaintiffs for provisions.

There was evidence tending to show that, although the defendants' whole herd of swine had been exposed to the aforesaid disease, yet that some of the herd were not in fact diseased; and there was also evidence tending to show that an animal might be infected with the said disease, and the meat of such animal would not necessarily, for that reason, be unwholesome and unfit for food.

The judge instructed the jury as follows: " At common law, the general rule is, that where personal property is sold in the presence of the buyer and seller, each having an opportunity to see the property, and there is nothing said about the quality, the only implied warranty on the part of the seller is that he has a valid title to, or has a right to sell, the chattel.   In the case of a provision dealer or marketman selling meat, flour, or vegetables to his customers, there is an exception to this general rule; the law presumes that the marketman or provision dealer knows whether the provisions he sells are in a condition fit for use, and, knowing what use his customers are to make of the articles sold, the law implies a warranty on the part of the seller, although he does not say anything, that the food is wholesome."

The judge further instructed the jury as follows: " This exception to the general rule does not apply in these cases, for the

reason that the defendants are farmers, and not provision dealers or marketmen. And the plaintiffs are not entitled to prevail in these cases, if they have failed to prove the allegations in their declarations, that the defendants knew that the meat sold by them to the plaintiffs was unwholesome and improper meat to be used as provisions."

Other and full instructions were given.

The jury returned a verdict for the defendants; and the plaintiffs alleged exceptions.

*W. W. McClench*, for the plaintiffs.

*E. W. Chapin*, for the defendants.

DEVENS, J. It was known to the defendants that the plaintiffs purchased the meat to be used as provisions, but it was held by the presiding judge that, in order that they should recover, they must prove the allegations in their declarations, that the defendants knew that the meat sold by them was unwholesome, and improper to be used as provisions. He instructed the jury that, at common law, the general rule is, that where personal property is sold in the presence of buyer and seller, each having an opportunity to see the property, and there is nothing said as to the quality, the only implied warranty on the part of the seller is that he has a valid title in, or has a right to sell, the chattel. He added, that there is an exception to this general rule where a provision dealer or marketman sells provisions, as meat and vegetables, to his customers for use, and that in such case there would be an implied warranty that they were fit for use and wholesome.

Whether this exception exists or not, it is not important in the case at bar to inquire, as it cannot be, and was not, contended that the defendants were brought within it. The contention of the plaintiffs is, that, even if the rule is well established that, where there is no express warranty and no fraud, no warranty of the quality of the thing sold is implied by law, and that the maxim of *caveat emptor* applies, there is a more general exception which excludes from its operation all sales of provisions for immediate domestic use, no matter by whom made.

That in a sale of an animal by one dealer to another, even with the knowledge that the latter dealer intends to convert it into meat for domestic use, or that in the sale of provisions in

the course of commercial transactions there is no implied war-
ranty of the quality, appears to be well settled. *Howard* v. *Emer-
son*, 110 Mass. 320, and cases cited. *Burnby* v. *Bollett*, 16 M.
& W. 644. While occasional expressions may be found, as in
*Van Bracklin* v. *Fonda*, 12 Johns. 468, which sustain the plain-
tiffs' contention, we have found but one decided case which
supports it. In *Van Bracklin* v. *Fonda*, *ubi supra*, it is said
that in a sale of provisions the vendor is bound to know that
they are sound, at his peril, but the case shows that the de-
fendant, who had sold beef for domestic use, knew the animal
from which it came to be diseased. This had been found by
the jury, and the remark is made in connection with the facts
proved.

The case of *Hoover* v. *Peters*, 18 Mich. 51, does sustain the
plaintiffs' contention, as it is there held that, where articles of
food are bought for domestic consumption, and the vendor sells
them for that express purpose, the law implies a warranty that
they are fit for such purpose, whether the sale be made by a
retail dealer or by any other person. This case imposes a
heavier liability on a person not engaged in the sale of pro-
visions as a business than he should be called on to bear. The
opinion is not supported by any citation of authorities. In a
dissenting opinion by Mr. Justice Christiancy it is said, "Had
it appeared that he [the defendant] was the keeper of a meat
market or butcher's shop and was engaged in the business of
selling meat for food, and therefore bound or presumed to know
whether it was fit for that purpose, I should have concurred in
the opinion my brethren have expressed." If there is an ex-
ception to the rule of *caveat emptor* which grows out of the cir-
cumstances of the case and the relations of buyer and seller,
where the latter is a general dealer and the former a purchaser
for immediate use, there appears no reason why it should be
further extended.

In the case at bar, the defendants were not common dealers in
provisions, or marketmen. They were farmers selling a portion
of the produce of their farms. No representations of the quality
of the meat sold was made by them. In making casual sales
from a farm of its products, to hold the owner to the duty of
ascertaining at his peril the condition of the articles sold, and

of impliedly warranting, if sold with the knowledge that they are to be used as food, that they are fit for the purpose, imposes a larger liability than should be placed upon one who may often have no better means of knowledge than the purchaser.

The plaintiffs contend that the case of *French* v. *Vining*, 102 Mass. 132, is decisive in their favor, but it appears to us otherwise. In that case the defendant sold hay, which he knew had been poisoned, for the purpose of being fed to a cow, although he had carefully endeavored to separate the damaged portion from the rest, and supposed he had succeeded. From the effects of eating the hay the cow died, and the defendant was held liable. His knowledge of the injury to the hay was certain and positive; his belief that he had remedied the difficulty was conjectural and uncertain, and proved to be wholly erroneous.

In the case at bar, while the defendants' herd had been exposed to hog cholera, there was evidence that a portion of it only had been affected, and further, that, even if affected, the meat of the animals was not necessarily unwholesome. There was no evidence that the animals whose meat was sold had ever, so far as the defendants knew, actually had the disease; and the verdict of the jury has established that they were ignorant that the meat sold by them was unwholesome.

In *French* v. *Vining*, the defendant knew what the condition of the hay had been, and this is a vital part of the case. He sold an article which he knew had been poisoned, and from which he had taken no effectual means to remove the poison. His belief or supposition that his effort had been successful could not relieve him from liability for the consequences that ensued because it had been unsuccessful, if he sold the hay without informing the purchaser of the dangerous injury which it had received.

*Exceptions overruled.*