RENA FARRELL *vs.* MANHATTAN MARKET COMPANY.
HOWARD FARRELL *vs.* SAME.
MARY FARRELL *vs.* SAME.

Middlesex.   November 20, 1907. — April 2, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Sale, Caveat emptor*, Of provisions, Implied terms of.   *Negligence*, Of dealer in selling unwholesome provisions.   *Contract*, Implied.

Discussion by LORING, J., of the doctrine of *caveat emptor* as applied to sales of provisions.

*It seems* that, where one, in purchasing provisions from a dealer, gives his order in such a way that he leaves the selection of the provisions to the dealer's skill and judgment, and they prove to be unwholesome and the purchaser is injured thereby, the dealer is liable to the purchaser in an action either of contract or of tort.

A dealer who offers provisions for sale thereby represents that he believes them to be sound and wholesome, and, if he *bona fide* does so believe, he is not liable for the consequences of their not being so unless the contract of sale is made upon an express or implied term or condition that they are sound and wholesome.

In an action of tort by a woman against the proprietor of a provision market, the declaration alleged that the defendant at his market sold to the plaintiff as food,

"with the implied warranty that it was fit for food, a certain slaughtered fowl which was not safe for eating, but was poisonous," "that the defendant knew, or in the exercise of reasonable care and diligence could and should have known, that the fowl was unfit for food," and that the plaintiff ate thereof and became sick. At the trial it appeared that the plaintiff had gone to the defendant's market on a Saturday night in July and, at a counter where the defendant was accustomed on Saturday nights to sell fowl at half price, asked the salesman if a certain fowl was "a cold storage fowl." The salesman replied, "Don't you know a good thing when you see it? It's strictly fresh." The plaintiff thereupon purchased the fowl at half price. The fowl proved to be unwholesome and the plaintiff was injured as alleged in the declaration. There was evidence that one familiar with the examination of chickens would have ascertained the unwholesomeness of the fowl purchased by the plaintiff by an external examination. A verdict was ordered for the defendant. *Held,* that the verdict was ordered rightly, since there was no evidence which would warrant the submission to the jury of the question whether the plaintiff relied on the skill and judgment of the salesman in the selection of the fowl, and therefore the defendant was not liable if he believed the fowl to be wholesome, and there was no evidence that he did not believe it to be wholesome.

Negligence is not the test of the liability of a dealer for selling unwholesome food.

THREE ACTIONS OF TORT. Writs in the Superior Court for the county of Middlesex dated October 13, 1905.

The amended declaration in the third case was in two counts, the second count being to recover for loss of services of the plaintiff's minor daughter, the plaintiff in the first case. The first count in substance was as follows:

"And the plaintiff says that the defendant, its agents and servants, negligently sold to her, at its market in Cambridge, as food, and with the implied warranty that it was fit for food, a certain slaughtered fowl, which fowl was not safe for eating, but was poisonous; and thereupon the said fowl was cooked, and part of it was eaten by the plaintiff, who was thereby made sick because of the poisonous quality of the fowl, and was severely injured in body and mind; that the defendant knew, or in the exercise of reasonable care and diligence could and should have known that the said fowl was unfit for food. And the plaintiff says that in all the premises she was in the exercise of due care, but that the defendant, its agents and servants, were negligent."

There was a trial before *Hitchcock,* J., who, as stated in the opinion, refused to rule as requested by the plaintiffs and directed a verdict for the defendant; and the plaintiffs alleged exceptions.

The facts are stated in the opinion.

*M. A. Sullivan,* for the plaintiffs.

*H. T. Richardson,* for the defendant.

LORING, J.  These cases come up on an exception to a ruling directing a verdict for the defendant.

The plaintiff in the third case (whom we shall speak of as the plaintiff) was the mother of those in the other two.  The defendant is a corporation engaged in carrying on a retail market and provision store.  The jury were warranted in finding the following to be the facts in the case:

On a Saturday evening in July the plaintiff, in the words of the bill of exceptions, " purchased a chicken from one of the salesmen " of the defendant.  She asked the salesman if it was a cold storage fowl, and he answered " Don't you know a good thing when you see it?  It's strictly fresh."  She paid twelve and a half cents a pound, the price " having been reduced from twenty-five cents per pound, which was the defendant's custom on Saturday night in several of its departments."

The next morning at ten o'clock she removed the entrails, washed the fowl, wiped, boiled and then roasted it, and at four o'clock she and the other two plaintiffs ate a portion of it and were made sick ; what they suffered from was ptomaine poisoning.

The plaintiff introduced expert evidence that, if the chicken was not fit for food, there would be a discoloration " from the neck down the length of the backbone; that, if no such discoloration were visible, the chicken was fit for food unless it had eaten some poisonous substance, which might be shown by an examination of the crop if the meat itself were diseased ; all of which could be ascertained upon inspection by any one familiar with the examination of chickens."  The plaintiff testified " that she noticed no such discoloration of any kind at any time."

It appeared " that the defendant requested its customers not to handle fowl before purchasing, which was known to the plaintiff, but that nothing was said to her in this particular at the time of the sale, and that this request was frequently ignored by customers, which fact was not known to her."

At the conclusion of the evidence the plaintiffs requested the judge to rule " that a retail dealer in provisions selling chicken under the circumstances in this case impliedly warranted the chicken fit for food ; " also " that it was a question of fact for

the jury to say whether or not the chicken was fit for food, whether or not the plaintiffs were injured by eating of diseased chicken, and whether or not the defendant was negligent in failure to make a sufficient and proper examination of the chicken before selling it to the plaintiff for consumption." The presiding judge " declined to give the plaintiffs' requests, saying that he did not feel called upon to make such ruling, and ruled that there was not sufficient evidence that would warrant the jury in finding a verdict for the plaintiffs, and ordered a verdict for the defendant in all three cases."

It was held in *Norton* v. *Doherty,* 3 Gray, 372, on the authority of *Williamson* v. *Allison,* 2 East, 446, that tort for a false warranty as well as an action of contract lies in case a chattel is sold with warranty and the warranty is broken. A number of earlier English cases to the same effect are collected by Holmes, J., in *Nash* v. *Minnesota Title Ins. Co.* 163 Mass. 574, 587, and the proposition is there repeated. To the same effect see *Emmons* v. *Alvord,* 177 Mass. 466, 470, and *Boston Woven Hose & Rubber Co.* v. *Kendall,* 178 Mass. 232, 237. In tort for a false warranty the *scienter* need not be alleged, and, if alleged, it need not be proved. Shaw, C. J., in *Norton* v. *Doherty,* 3 Gray, 372, 373. Holmes, C. J., in *Nash* v. *Minnesota Title Ins. Co.* and *Emmons* v. *Alvord, ubi supra.*

We assume therefore that an action of tort may be maintained for breach of a warranty. In the case at bar the plaintiff has alleged that the defendants sold the fowl to the plaintiff with the implied warranty that it was fit for food. The principal question in the case is whether that allegation has been made out.

In *Howard* v. *Emerson,* 110 Mass. 320, it was decided that, in the sale of a cow by a farmer to a butcher to be cut up for meat, there was no implied warranty that it was fit for that purpose. After stating the general rule to be that in a sale of goods the maxim *caveat emptor* applies and that the defendant contended that articles of food sold for immediate domestic use are an exception, Morton, J., said: " But we think that this exception, if established, does not extend beyond the case of a dealer who sells provisions directly to the consumer for domestic use."

*Giroux* v. *Stedman*, 145 Mass. 439, was a similar decision. There the defendants, who were farmers, killed two hogs and sold them to the plaintiffs to be eaten. The presiding judge instructed the jury as to the general rule laid down in *Howard* v. *Emerson;* next he told them that there was an exception in case of a sale of provisions by a dealer (although that had been left open in *Howard* v. *Emerson*), but he added that that exception did not apply to a sale by a farmer, and left the case to the jury on the defendants' knowledge of the condition of the hogs. In disposing of an exception to this instruction, Devens, J., said : " Whether this exception exists or not, it is not important in the case at bar to inquire, as it cannot be, and was not, contended that the defendants were brought within it."

It becomes necessary in the case at bar to consider the question left open in these two cases, and to decide whether there is such an exception to the general rule which obtains in the sale of chattels.

A case of first importance on this subject is *Bigge* v. *Parkinson*, 7 H. & N. 955, decided by the Exchequer Chamber in 1862.

Before that case was decided, the law on the subject was not in a satisfactory condition. It was laid down in a number of cases in the Year Books, collected in *Burnby* v. *Bollett*, 16 M. & W. 644, that the keeper of a tavern is liable for furnishing bad food or bad wine to his guests. The case in Year Book 9 Henry VI. 53, may be taken as an example. It is there said: " If I come into a tavern to eat and he gives and sells to me beer and flesh which are corrupt by which I am put into a great sickness, I shall have against him my action on the case clearly, even although he made no guaranty to me." Mr. Justice Blackstone had laid it down without citing any authorities that: " In contracts for provisions it is always implied that they are wholesome." 3 Bl. Com. 165. In *Burnby* v. *Bollett*, 16 M. & W. 644, (decided in 1847,) it had been decided that in the sale of the carcass of a pig by one not a dealer, where the carcass was inspected by the buyer, there was no implied warranty of soundness. Parke, B., in delivering the opinion of the Court of Exchequer in that case suggested that the cases in the Year Books depended on statutes repealed before the sale then in

question, making it an offence for victuallers, butchers and other common dealers in victuals to sell corrupt victuals. In *Emmerton* v. *Mathews*, decided by the Court of Exchequer in the same year and reported in the same volume (7 H. & N. 586) as *Bigge* v. *Parkinson*, it was held that in the sale of a carcass of meat by one who sold meat on commission for his consignors, there was no implied warranty of soundness. This case, as reported in 7 H. & N. 586, would seem to go on the ground that one who sells meat as a factor for others is not a dealer; but in the report in 5 L. T. (N. S.) 681, Pollock, C. B., is reported to have said that " the plaintiff bought on his own inspection," and in *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, the decision in *Emmerton* v. *Mathews* was stated to have been made on the ground that the plaintiff selected the meat.

This was the state of the law on the subject when *Bigge* v. *Parkinson* came up for decision. *Bigge* v. *Parkinson* was a case where the plaintiffs, being ship owners, had chartered a ship to the East India Company to carry troops from London to Bombay. They had made a contract with the defendant, who was a provision merchant, by which the defendant agreed to supply the ship with provisions and stores for the troops at so much a head. Under this contract the defendant had supplied provisions and stores which were unsound and unwholesome, and it was held that he was liable on an implied warranty that the provisions and stores supplied should be fit to be eaten.

The ground on which this conclusion was reached is thus stated by Cockburn, C. J., who delivered the opinion of the Court of Exchequer Chamber after time had been taken for consideration: " The principle of law is correctly stated in the passage cited from Chitty on Contracts [p. 399, 6th ed.]. Where a buyer buys a specific article, the maxim ' *caveat emptor* ' applies; but where the buyer orders goods to be supplied, and trusts to the judgment of the seller to select goods which shall be applicable to the purpose for which they are ordered, there is an implied warranty that they shall be reasonably fit for that purpose; and I see no reason why the same warranty should not be comprehended in a contract for the sale of provisions."

The rule thus laid down by Cockburn, C. J., in *Bigge* v.

*Parkinson,* has been followed in all subsequent cases and is now established as the law in England on the question now before us.

The first proposition laid down in *Bigge* v. *Parkinson* is that there is no difference between a sale of provisions and the sale of other articles in respect to there being or not being an implied warranty that they are fit.   In his opinion in *Bigge* v. *Parkinson,* Chief Justice Cockburn first states the general rule that *caveat emptor* applies where a person buys a specific article; he then states that where goods (not articles of food) are supplied under a contract and the buyer trusts to the judgment of the seller to select the goods, there is an implied warranty of fitness; he then decides that these rules apply to a contract to supply provisions.   Since the decision in *Bigge* v. *Parkinson,* the question of an implied warranty of wholesomeness in the sale of provisions always has been treated as a question to be determined by the application of the rules which obtain in case of the sale of other chattels, and not as an exception.   See to that effect Chalmers, Sale of Goods Act, 1893, 32; see also, for example, Mellor, J., in the leading case of *Jones* v. *Just,* L. R. 3 Q. B. 197, 202; FitzGibbons, L. J., in *Wallis* v. *Russell,* [1902] 2 I. R. 585, 612.

The second proposition laid down in *Bigge* v. *Parkinson* is that the rule which makes a dealer liable for selling unsound provisions is the rule which is applied where a chattel (no matter what kind of chattel it may be) is ordered of a manufacturer or dealer for a particular purpose.   In such a case there is an implied warranty that the article furnished will be fit for the particular purpose.   It was settled before *Bigge* v. *Parkinson* was decided that this rule applied to dealers as well as to manufacturers.   *Jones* v. *Bright,* 5 Bing. 533.   *Gardiner* v. *Gray,* 4 Camp. 144.

We pause to point out the limitations of this rule and the principle on which it is based.

The rule was stated later with great accuracy by Mellor, J., in *Jones* v. *Just,* L. R. 3 Q. B. D. 197, 202, in these words : " Fourthly, where a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer

necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term or warranty that it shall be reasonably fit for the purpose to which it is to be applied. *Brown* v. *Edgington*, 2 Man. & G. 279. *Jones* v. *Bright*, 5 Bing. 533. In such a case the buyer trusts to the manufacturer or dealer, and relies upon his judgment and not upon his own."

The principle on which this rule is founded was stated by Lord Esher, (then Brett, J. A.,) in delivering the opinion of the Court of Appeals in *Randall* v. *Newson*, 2 Q. B. D. 102, to be this: Where a manufacturer or a dealer contracts to supply an article for a particular purpose and the purchaser trusts to his judgment and skill in the matter, the obligation really entered into by the manufacturer or the dealer, if written out, would be stated to be to supply an article fit for the purpose named; an article not fit for that purpose is not as matter of description the article called for by the contract. And since in the case put the obligation to supply an article fit for the purpose named is not stated in terms, the obligation to furnish such an article is an implied and not an express term or condition of the contract.

It is not accurate, therefore, to say that there is an implied warranty of fitness in case of an order for goods for a particular purpose, to be furnished by a manufacturer or a dealer. It is an implied term or condition of the contract, not an implied warranty. See to this effect Chalmers, Sale of Goods Act, (1893) 31. It is so treated in the section of the Sale of Goods Act (56 & 57 Vict. c. 71) in which this rule is stated:

"14. Subject to the provisions of this Act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract of sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, so as to show that the buyer relies on the seller's skill or judgment, and the goods are of a description which it is in the course of the seller's business to supply (whether he be the manufacturer or not), there is an implied condition that the goods shall be reasonably fit for such purpose, provided that in

the case of a contract for the sale of a specified article under its patent or other trade name, there is no implied condition as to its fitness for any particular purpose."

For a case like *Bigge* v. *Parkinson*, decided under the Sale of Goods Act, see *Frost* v. *Aylesbury Dairy Co.* [1905] 1 K. B. 608.

There is one difference between a contract with a dealer to supply ordinary articles and a contract with a dealer to supply food : In a contract with a dealer to supply food it is not necessary to state to the dealer that the food is to be eaten. That goes without saying. A contract for the supply of food without stating the purpose for which the food is required stands on the same footing as a contract to supply other articles when the particular purpose for which they are wanted has been stated to the dealer.

*Bigge* v. *Parkinson* was a case where goods were supplied under a pre-existing contract. But there is no difference between a dealer's supplying provisions under a contract previously made and a dealer's supplying provisions in response to an order to be accepted by shipping the provisions. The material fact is that the purchaser makes known to the seller that he relies on his skill and judgment in selecting the provisions ordered. *Beer* v. *Walker*, 37 L. T. (N. S.) 278, decided before the Sale of Goods Act, and *Burrows* v. *Smith*, 10 Times L. R. 246, decided since that act was passed, were cases of orders. To the same effect see Grove, J., in *Smith* v. *Baker*, 40 L. T. (N. S.) 261, 263.

Finally, provisions may be ordered by the purchaser in person in the dealer's shop, in such a way that it is made known to the dealer that his knowledge and skill are relied on to supply wholesome food, and, if they are so ordered, he is liable if they are not fit to be eaten. That was decided in *Wallis* v. *Russell*, [1902] 2 I. R. 585. In that case the plaintiff sent her granddaughter to buy two nice fresh crabs for tea. The granddaughter went to the defendant, a dealer, and delivered the message. The defendant's assistant selected two. Thereupon the granddaughter, pointing to a third crab, asked the assistant if he did not think that it was a better one. The assistant took it up, felt it, said it was by the weight one should judge and not the size, and put it aside. The granddaughter testified that she relied altogether

on the assistant's judgment. In answer to a question put by the presiding judge the jury found that the plaintiff, through the granddaughter, relied on the defendant's assistant to select fresh and reasonably fit crabs. They also found that the plaintiff, through the granddaughter, had an opportunity to examine the crabs at the time of the sale and that the defendant honestly believed that the crabs were fresh and fit for food. There was no contention that the defendant was negligent, and on the facts such a contention would have been futile. The plaintiff and her granddaughter ate the crabs and were both made violently ill. In an action brought by the plaintiff it was held by the High Court of Justice and on appeal by the Court of Appeal for Ireland that she could recover. This case arose under the Sale of Goods Act. But not only is that act as a whole a codification of the law as it existed before, but the sub-section in question (sub-section 1 of § 14) is in substance and almost in terms the fourth rule laid down by Mellor, J., in *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, 203. If the purchaser who goes in person to the provision store in fact gives his order in such a way that he leaves the selection of the food to the seller's skill and judgment, we have a case which stands on the same footing as those where provisions are supplied under a previous contract or are shipped in pursuance of a written order.

The rule now established in England is that, in the sale of an article of food by one not a dealer, there is no implied condition or warranty that it is fit to be eaten. *Burnby* v. *Bollett*, 16 M. & W. 644. *Emmerton* v. *Mathews*, 7 H. & N. 586. *Smith* v. *Baker*, 40 L. T. (N. S.) 261. Cockburn, C. J., in *Bigge* v. *Parkinson*, 7 H. & N. 955. These are all of them cases decided before the Sale of Goods Act. Since the Sale of Goods Act, if the sale is made by one not a dealer, there is no liability, by force of § 14. If the sale is by a dealer and the selection of food is left to him, it is an implied term or condition of the sale that the provisions sold shall be fit for food whether supplied under a pre-existing contract, (*Bigge* v. *Parkinson*, 7 H. & N. 955,) or in response to an order not given in person, (*Beer* v. *Walker*, 37 L. T. (N. S.) 278; *Burrows* v. *Smith*, 10 Times L. R. 246; Grove, J., in *Smith* v. *Baker*, 40 L. T. (N. S.) 261, 263,) or even when the order is given in person in the dealer's shop, provided, as we have

said, that the selection is left to the dealer. *Wallis* v. *Russell*, [1902] 2 I. R. 585. But, even when the sale is by a dealer, if the provisions are selected by the buyer and the selection is not left to the judgment and skill of the dealer, the general rule applies and the dealer is not liable (in the absence of knowledge by the dealer that the provisions are unsound) if the provisions are not fit for food. Mellor, J., in *Jones* v. *Just*, 3 Q. B. 197, 202. *Emmerton* v. *Mathews*, 5 L. T. (N. S.) 681, and as interpreted by Mellor, J., *ubi supra*. Cockburn, C. J., in *Bigge* v. *Parkinson*, 7 H. & N. 955, before the Sale of Goods Act. Under the Sale of Goods Act this is so by force of § 14 because the case does not come within any of the sub-sections.

This brings us to a consideration of the law in Massachusetts outside the cases of *Howard* v. *Emerson* and *Giroux* v. *Stedman* already referred to, where this question was left open.

It is familiar law in Massachusetts that where goods are ordered of a manufacturer for a particular purpose within the rule stated more accurately in *Jones* v. *Just*, *ubi supra*, and in sub-section 1 of § 14 of the Sale of Goods Act, there is an implied condition that they shall be fit for that purpose.

There is one case in Massachusetts where it has been laid down that the same rule applies in case of a dealer. *Hight* v. *Bacon*, 126 Mass. 10. The conclusion ultimately reached in *Hight* v. *Bacon* was that the goods there in question were specific articles bought on inspection by the buyer, and were not ordered by the buyer for a particular purpose trusting to the skill and judgment of the seller. But the rule stated above was laid down as applicable to a dealer as well as to a manufacturer, and that rule was stated to be the rule on which the case then before the court (a sale by a dealer) was to be decided.

The fact that in this class of cases the question is not, speaking accurately, a matter of implied warranty but of implied condition, (as is stated at length by Lord Esher in *Randall* v. *Newson*, 2 Q. B. D. 102,) is pointed out by Holmes, J., in *Murchie* v. *Cornell*, 155 Mass. 60, 63, and by Rugg, J., in *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 451–453. These were cases of an implied condition that the thing sold was merchantable. The two sets of cases rest on the same principle.

In addition, Sewall, J., in *Emerson* v. *Brigham*, 10 Mass. 197,

201, (decided in 1813,) said: "Justice Blackstone (3 Bl. Com. 164, 165) has classed the cases of deceit and breaches of express warranties, in contracts for sales, under the head of implied contracts. He says it is constantly understood that the seller undertakes that the commodity he sells is his own; and in contracts for provisions, it is always implied that they are wholesome; and in a sale with warranty, the law annexes a tacit contract that, if the article be not as warranted, compensation shall be made to the buyer; and if the vendor knows his goods to be unsound, and hath used any art to disguise them, or if they be in any shape different from what he represents them to be to the buyer, this artifice shall be equivalent to an express warranty, and the vendor is answerable for their goodness. It is obvious that, in this very general classification, the details and examples are imperfectly introduced, and with some inaccuracy. It is not implied, in every sale of provisions, that they are wholesome, any more than it is in sales of other articles, where proof of a distinct affirmation seems, in Justice Blackstone's opinion, to be requisite. The contrary may be, and often is, understood between the parties; and it is only when the false representation, to be proved in the one case, may be presumed or taken to be proved in the other, that the rule of law applies, and the remedy, as in a case of deceit, is allowed. An artifice must be proved, to entitle the suffering party to the remedy, equivalent to a remedy upon an express warranty, as well in the case of provisions, as in any other case. The difference is, that, in the case of provisions, the artifice is proved, when a victualler sells meat as fresh to his customers at a sound price, which at the time was stale and defective, or unwholesome from the state in which the animal died. For, in the nature of the bargain, the very offer to sell is a representation or affirmation of the soundness of the article, when nothing to the contrary is expressly stated; and his knowledge of the falsehood in this representation is also to be presumed from the nature and duties of his calling and trade." *Emerson* v. *Brigham* was decided for the defendant because there was no evidence that the defendant knew of the unsoundness.

The statement that offering articles of food for sale is of itself a representation that the articles offered are believed to be sound was repeated in *Winsor* v. *Lombard*, 18 Pick. 57, 62; it was on

this ground that *French* v. *Vining*, 102 Mass. 132, was decided for the plaintiff; and, finally, it was assumed in *Giroux* v. *Stedman*, 145 Mass. 439, where the only question left to the jury was the defendant's knowledge that the pigs were diseased.

Field, C. J., in *Bowe* v. *Hunking*, 135 Mass. 380, 384, said that "*French* v. *Vining*, 102 Mass. 132, rests upon negligence, or upon an implied warranty that the hay was fit to be fed to cows." It does not appear in the report of that case nor in the original papers that the defendant in *French* v. *Vining* was a dealer. *French* v. *Vining* therefore cannot stand "upon an implied warranty that the hay was fit to be fed to cows." There is no implied term or condition that articles of food sold by one not a dealer are fit to be eaten. *Howard* v. *Emerson*, 110 Mass. 320, and *Giroux* v. *Stedman*, 145 Mass. 439. The opinion in *French* v. *Vining* purports to decide the case on the ground of fraud and deceit; and in the subsequent cases of *Trambly* v. *Ricard*, 130 Mass. 259, 260, *Giroux* v. *Stedman*, 145 Mass. 439, 443, and *Martin* v. *Richards*, 155 Mass. 381, 384, *French* v. *Vining* is either stated to be or is treated as being a case of fraud and deceit. The difficulty in *French* v. *Vining* was to make out that, under the circumstances there disclosed, there was proof of the *scienter*. The court decided that there was. It ought to be noted that in the subsequent case of *Provost* v. *Cook*, 184 Mass. 315, which purported to follow *French* v. *Vining*, it appears from the original papers that the defendants were dealers in grain. The article of food there sold was oats.

The decisions on the question now before us in the United States ouside Massachusetts are not many, and they do not deal with the question at length. There is much in these opinions in conflict with what is now the settled law in England. So far as decisions go, however, there is but one in conflict with that rule. That is the decision in *Hoover* v. *Peters*, 18 Mich. 51. In that case it was held that in the sale of food for immediate domestic consumption there is an implied warranty that it is fit to be eaten although the sale was made by one not a dealer. That is not the law in Massachusetts. *Howard* v. *Emerson*, 110 Mass. 320. *Giroux* v. *Stedman*, 145 Mass. 439. No cases are cited in the opinion and there is a dissenting opinion by Christiancy, J., on the ground that to make out a liability in a sale of provi-

sions, the vendor must be a dealer or it must be proved that the defendant knew the provisions to be unsound.

In *Van Bracklin* v. *Fonda*, 12 Johns. 468, (decided in 1815,) it was held that the plaintiff, who had bought a piece of beef which proved to be unwholesome, had purchased it from one who apparently was not a dealer. It was held that the plaintiff could recover on the authority of the statement in Blackstone's Commentaries, and because " the verdict settles the facts that the beef was unsound and unwholesome and that the defendant below knew the animal to be diseased." This case has been followed in some subsequent cases.

In *Wiedeman* v. *Keller*, 171 Ill. 93, (decided in 1898,) it was held that in a sale by a dealer there is an implied warranty.

*Goad* v. *Johnson*, 6 Heisk. (Tenn.) 340, referred to in *Wiedeman* v. *Keller*, 171 Ill. 93, 98, as a case contrary to the decision there made, was a sale of live cattle on inspection.

We are of opinion that the rule stated above, now established in England, is the true rule as to when there is an implied term or condition of soundness in the sale of food.

We are also of opinion that offering food for sale is in itself a representation that it is believed to be sound, and that, where there is no implied term or condition of soundness, the defendant is not liable unless he knew of the fact that the food sold was not fit to be eaten.

Coming to the case at bar and to the allegation in the declaration that the fowl here in question was sold with an implied warranty that it was fit for food: To prove that allegation, the burden was on the plaintiff to prove that, in making the purchase here in question, she relied on the skill and judgment of the defendant's servant in selecting the fowl; in other words, the burden is on her to make out that the purchase of the fowl in the case at bar was not the purchase of a specific chattel, and that it was a purchase of the same kind as is a purchase where food is shipped under a previous contract or in fulfilment of an order, that is to say, where the buyer relies on the seller's skill and judgment. It is enough to dispose of this case to say that the plaintiff did not sustain the burden of proof on that issue. The evidence did not disclose how or by whom the fowl was selected; all that is stated on that point is that " the plaintiff

Mary Farrell went to the defendant's store at about 9.15 P. M. on Saturday, July 1, 1905, and purchased a chicken from one of the salesmen." Moreover, so far as the evidence went, it showed that, in offering the fowls from which the one in question was selected, the defendant did not offer to exercise his skill and judgment in supplying sound food. The fowl in question was bought from those exhibited on a Saturday night in July, by the defendant, on a bargain counter, to be sold at fifty cents on the dollar. It is manifest that the defendant offered this meat for sale to avoid carrying it over Sunday in hot weather, and it is a fair inference that, like all articles on a bargain counter, the selection was to be made by the buyer. See in this connection ' the statement of Sewall, J., in *Emerson* v. *Brigham*, 10 Mass. 197, 201 : " The difference is, that, in the case of provisions, the artifice is proved, when a victualler sells meat as fresh to his customers at a sound price."

The plaintiff's next contention is that the defendant knew that the fowl was unfit for food and that she is entitled to recover on that ground. There are no allegations in the declaration that the defendant represented that the fowl was fit for food and that the plaintiff bought it relying on that representation. For that reason the ruling was right if made on the state of the pleadings.

But, passing that by, there was no evidence that warranted a finding that the defendant knew that the fowl was unsound.

This brings us to the allegation in the declaration that the defendant " in the exercise of reasonable care and diligence could and should have known that said fowl was unfit for food and the plaintiff says that in all the premises she was in the exercise of due care, but the defendant, its agents and servants were negligent."

In support of her contention that the defendant 'is liable here for negligence in selling her an unsound fowl, the plaintiff relies on the rule that an apothecary is liable who sells a poison labelled as a harmless drug, (as to which see *Norton* v. *Sewall*, 106 Mass. 143,) and on the case of *Bishop* v. *Weber*, 139 Mass. 411.

The ground on which the apothecary is liable is that he deals

in poisons.   That is quite different from dealing in food which may become poisonous.   That rule does not in our opinion apply to the sale of articles of food.

*Bishop* v. *Weber*, 139 Mass. 411, was a case where the plaintiff alleged in her declaration that the defendant had been employed as a caterer to furnish a supper to such of those attending the triennial celebration of the Handel and Haydn Society who should buy a ticket of him for the supper ; that she purchased a ticket and was poisoned by food eaten by her and so furnished by the defendant; and that the defendant was negligent in the premises.   To this the defendant demurred.   It was assumed by the court that the declaration was in tort and not in contract, although the writ covered both tort and contract; and the only question discussed was whether the plaintiff, who was not a party to the contract, could maintain an action.   It was held that she could, on the doctrine that an apothecary who marks laudanum paregoric is liable to a plaintiff (not a party to the contract) who swallows the laudanum in consequence of the label.   There seems to be ground for holding that the declaration in *Bishop* v. *Weber* was good as a declaration on a contract between the plaintiff and the defendant.   All that was decided in that case was that the declaration was good.   Whether negligence is the ground for holding a caterer or innkeeper liable for serving poisonous food was not discussed.

Whatever may be the rule in respect to caterers in serving meals, there is no case in which it has been held that in the sale of provisions by a dealer the test of his liability is negligence. If the selection is left to the dealer, due care by him is no defense.   He is liable for latent unsoundness that could not be discovered.   *Wallis* v. *Russell*, [1902] 2 I. R. 585.   And see as to due care in the sale by a dealer of chattels not articles of food, *Randall* v. *Newson*, 2 Q. B. D. 102.   As due care is no defense when the dealer makes the selection, so there is no liability for negligence when a dealer offers several articles of food for sale from which the buyer is to make his own selection.   In offering these several articles, he impliedly represents that he believes all of them to be fit for food.   That is the extent of his liability ; no question of negligence is involved.   The implied representation of soundness apart, there is no liability on a

vendor of food to be selected by the buyer because he did not procure and offer for sale better food than he procured and offered for sale.

As the plaintiff in the third case, who bought the fowl, cannot recover, it is not necessary to consider the cases brought by her children.

The result is that the exceptions must be overruled.

*So ordered.*