No. 4600

## LEROY GAGE

v.

## LEO HELLER, d/b/a
## UNITED NATIONAL STORE

(December 22, 1952)

*Gadsby, P. J.* This is an action of contract or tort in which the plaintiff seeks to recover damages for personal injuries due to the consumption by him of *tomato juice* alleged to be unfit for human consumption sold by the defendant to the plaintiff. The plaintiff's declaration, as amended, contains three counts, the first sounding in contact, the second in tort with an allegation of negligence on the part of the defendant, and the third sounding in contract with an allegation of breach of warranty having caused personal injuries to the plaintiff and consequential damages to himself and his son said to have been caused by the consumption of the tomato juice.

The answer is a general denial, an allegation of contributory negligence, a further allegation that if the plaintiff suffered as alleged his injuries and damages were caused by a person for whose conduct the defendant was not responsible and that the plaintiff is barred from maintaining this action by the provisions of Chapter 106 of the General Laws.

At the trial there was evidence tending to show:

[110]

The defendant is engaged in the business of operating a grocery store in the City of Cambridge and has been so engaged for a period of thirty (30) years. He has four or five employees, three of whom are his sons, one of whom is in charge of the Grocery Department. On November 18, 1949 the defendant sold to the plaintiff a can of *Gro-Pak* tomato juice containing forty-six (46) liquid ounces. The defendant makes it a practice not to sell cans of food which bulge at the top or bottom and did not personally make the sale of tomato juice in question to the plaintiff.

The morning after the sale above described the plaintiff's wife served some of the tomato juice in question to the plaintiff and to his son at approximately 6:30 A.M. The plaintiff also ate at the same time coffee and toast. One-half hour or three-quarters of an hour after consumption of the tomato juice the plaintiff who had gone to work became ill and vomited and returned to his home and was unwell for two or three days, requiring one visit by a physician.

The top of the can purchased by the plaintiff bulged approximately ½ inch at the top and approximately ¼ inch at the bottom. The juice had a peculiar odor and was pale and bubbly. The inside of the can was a dark grayish color with white spots. The plaintiff's wife testified that the juice had a bitter taste.

On the day on which the plaintiff became ill, his wife spoke to the defendant's son who was employed by the defendant and complained about the tomato juice, returning it to him. The plaintiff's wife testified that the defendant's son looked at the remaining tomato juice and said that the air must have got at it.

If the plaintiff is entitled to prevail there is no question as to damages.

At the close of the trial and before the final argument the defendant made the following requests for rulings:

1. The evidence does not warrant a finding that the defendant was negligent in dealing with the can of tomato juice concerned in this action.

2. The evidence does not warrant a finding that the defendant packed or processed the can of tomato juice concerned in this action.

3. The evidence does not warrant a finding of any negligence chargeable to the defendant in connection with the alleged illness of the plaintiff.

4. If the plaintiff and the defendant rescinded the sale of the tomato juice and the defendant returned to the plaintiff the purchase price thereof, there has been an accord and satisfaction between the parties and the plaintiff cannot recover in this action.

5. The evidence warrants a finding that the parties have rescinded the sale out of which this action arises.

6. The evidence does not warrant a finding that the defendant is guilty of breach of any warranty given by him to the plaintiff.

The Court allowed the defendant's second Requests for Ruling and denied Requests Nos. 1, 3, 4, 5, and 6 as inapplicable to the facts found.

The following agreements were made between counsel in open court before commencement of trial in this matter:

1. That on November 18, 1949, the said wife shopped at the United National Store owned and operated by the Defendant, Leo Heller, and purchased from the Defendant a can of Gro-Pak tomato juice containing 46 liquid ounces together with other groceries.

2. That the purchase was made by wife as agent for her husband, LeRoy Gage, and

3. That due and sufficient notice of breach of warranty and the illness of Plaintiff and Richard was received by the Defendant, Leo Heller."

The Court made the following findings:

[112]

I find that on Friday, November 18, 1949, the Defendant was engaged in the business of the sale of food, groceries, and creamery items at 1410 Cambridge Street, Cambridge, and had been in this business for thirty (30) years. He had 4 or 5 employees, 3 of whom were his sons and 1 of whom was in charge of the grocery department. At least 2 of said employees were school boys whose duties included bringing up and piling up and displaying various can goods including tomato juice. The Defendent testified further that he had specifically instructed his sons and other employees not to put out for sale any cans that they found to be bulged at the bottom and on top. There was also evidence by a doctor for the Plaintiff that the contents of a can containing food would most probably be spoiled if the can showed bulging at top and bottom.

I find that the wife was not familiar with Gro-Pak tomato juice and did not select the same because of its brand name. I find that she took this can from a number of other cans alike in label and general appearance, all sealed and not open to inspection. She took this can home and put it in the refrigerator. The Plaintiff, Richard, and Mrs. Gage had fish fried in oil for their Friday evening meal. They were all well including Mrs. Gage when the Plaintiff arose to go to work. The Plaintiff and Richard each drank a glass of tomato juice. Plaintiff then complained of the juice being bitter, whereupon the wife tasted it and expectorated. The Plaintiff then had for breakfast coffee and toast. Richard had oatmeal, milk, and toast. Mrs. Gage had oatmeal, toast and coffee with milk but omitted the tomato juice. They had breakfast at 6:30 a.m. Richard vomited in about a half hour and had abdominal pains and diarrhea and was sick for 4 days. The Plaintiff came home about 8:30 a.m. He had the same troubles as the child and had been taken ill at work about 8:00 a.m and had already vomited. He lost one day from work. He worked for the Boston & Maine Railroad. His pay

[113]

was $69.80 per week. The wife called Dr. Tavares who diagnosed the conditions of both as food poisoning as a result of drinking this tomato juice. The Plaintiff had considerable suffering from vomiting, diarrhea, and cramps for two days.

Mrs. Gage examined the tomato juice on her husband's statement that it was bitter. The inside of the can was a dark grayish color with white spots. The juice itself was pale and bubbly. It had a rancid odor, and the bottom and top of the can were bulged ½ inch and ¼ inch respectively. Mrs. Gage testified and I find that when the can was placed on the table it rested entirely upon the bulge, no part of the thickened circular edge touching the table top.

She returned it eto the owner's son who offered to give her the price back which she refused. She notified the owner's son that the store had sold her rancid tomato juice, and this had caused sickness to her husband and child. The owner's son tasted the juice, expectorated, and poured the remainder of the contents down the sink and threw the can away. He told her that the air must have gotten at it.

I find that the Plaintiff was guilty of a breach of warranty made to the Plaintiff, LeRoy Gage, I also find that the Defendant, his agent, servant, or employee was negligent in selling a can of Gro-Pak tomato juice which the Defendant, his agents, servants or employees knew or should have known was defective and dangerous to health.

I find for the Plaintiff, LeRoy Gage, $400.00 in contract on Count III of his amended declaration.

The transaction between the plaintiff and the defendant as to the can of tomato juice involved a purchase of food to be eaten. It was an essential condition of the contract, implied without precise words. It is provided by the sales act, G.L. c. 106, § 17 (1).

[114]

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warrant that the goods shall be reasonably fit for such purchase."

This statute in substance, is merely a codification of the common law.

> *Farrell* v. *Manhattan Market Co.*, 198 Mass. 271.

The case at bar is on all fours with the case of *Ward* v. *Great Atlantic & Pacific Tea Co.*, 231 Mass. 90 at 93, where the Court said,

"The cans in the defendant's stock were all alike in label and in general appearance. The cans were sealed. Their contents could not in the nature of things be open to inspection before the sale. There could be no intelligent selection based upon any observation by the purchaser. There is no room for the exercise of individual sagacity in picking out a particular can. The customer at a retail store is ordinarily bound to rely upon the skill and experience of the seller in determining the kind of canned goods which he will purchase, unless he demands goods of a definite brand or trade name. The situation is quite different from the choice of a fowl or a piece of meat from a larger stock, all open to inspection, where there is opportunity for the exercise of an independent judgment by both the buyer and the seller, and where, therefore, the fact as to the one who makes the selection is of significance, as in the *Farrell* case. The case at bar must be treated on the footing, as matter of necessary inference arising from the relation of the parties, so far as that is material in view of the other facts, that the plaintiff relied upon the knowledge and trade wisdom of the defendant in purchasing the can of beans. In the absence of an express statement to the contrary, this must be regarded as a necessary inference from the relation of the parties."

In the case at bar it is clear that the reliance was placed by the plaintiff upon the skill and experience of the seller in determining the kind of

canned goods he purchases. The plaintiff did not request goods of a definite brand or trade name. The defendant was a dealer, the plaintiff a buyer at retail, thus there arises the implication that the plaintiff made known to the defendant that he was purchasing the tomato juice for consumption as food and that he was relying upon the skill of the defendant in selecting the can.

There being no prejudicial error, the finding for the plaintiff on a breach of warranty is therefore affirmed and the report is ordered dismissed.

Caleb Loring, Jr., for the Defendant.

Albert S. Resnick, for the Plaintiff.